# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

**FILED**

SEP - 2 2004

WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By:_____
Deputy Clerk

UNITED STATES OF AMERICA,    )
    )
    Plaintiff,    )
    )
v.    )    **Case No. CR-04-080-P**
    )
ANTHONY JASON ROBERTS,    )
    )
    Defendant.    )

## REPORT AND RECOMMENDATION

In this prosecution for making a bomb threat by telephone in violation of 18 U.S.C. § 844(e), and for unlawful possession of a firearm and ammunition in violation of 18 U.S.C. § 922, the Defendant Anthony Jason Roberts seeks to suppress evidence seized from his vehicle during an inventory search accompanying his arrest and the impoundment of the vehicle. On August 17, 2004, the undersigned United States Magistrate Judge conducted a hearing pursuant to 28 U.S.C. § 636(b)(1)(B) on the Defendant's Motion to Suppress and Brief in Support [Docket No. 7] filed on August 2, 2004. The Plaintiff, the United States of America (the "USA"), was represented by Assistant United States Attorney Ryan Roberts. The Defendant appeared in person with retained counsel, Dennis Shook. Upon review of the documents filed by the parties, including the USA's Response to Defendant's Motion to Suppress [Docket No. 11], the McCurtain County impoundment and inventory of vehicles policy [Def. Ex. 1], and consideration of the evidence presented at the hearing, the undersigned Magistrate Judge renders this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(C).

## A. Factual Background

In June of 2004, a number of bomb threats were made against the Weyerhauser Mill located in Wright City, Oklahoma. Three of these were phoned in anonymously to McCurtain County Emergency Medical Services ("EMS"), and another was phoned in to the Weyerhauser Mill guard shack. After the second threat was caught on tape by EMS, McCurtain County Sheriff Mike Willeby ("Sheriff Willeby") notified Special Agent Robert Sproull ("Agent Sproull") with the Federal Bureau of Investigation ("FBI") on June 7, 2004. Sheriff Willeby did not then know who was responsible for the threats, but the FBI eventually identified the Defendant as a suspect. Sheriff Willeby told this to his senior criminal investigator, Brian Bowen ("Deputy Bowen"), who advised the sheriff, *inter alia*, that the Defendant was known to travel with a portable scanner.[1]

On June 22, 2004, the day the final bomb threat was made, Sheriff Willeby ran a check on the Defendant for outstanding warrants and found none, but he did find that the Defendant had been arrested for driving under suspension and that his license was still suspended. Sheriff Willeby knew at the time that the FBI was trying to secure a federal arrest warrant for the Defendant, but he was not asked to obtain this information or to assist the FBI in apprehending the Defendant.

On June 23, 2004, Deputy Bowen saw the Defendant's vehicle being operated on a highway. He thereupon contacted Sheriff Willeby (by cell phone rather than by police radio, since he knew the Defendant traveled with a scanner) and gave him the Defendant's location and a description of his vehicle, a dark green extended cab "dually" pickup with a trailer

---

[1] Deputy Bowen testified that he had seen the Defendant within the past six months on horseback with a portable scanner. He also was aware that the Defendant had a rifle, but he did not share this information with Sheriff Willeby until *after* the Defendant's arrest.

(total length approximately thirty feet). Sheriff Willeby located the vehicle and identified the Defendant as the driver when the Defendant rolled down the window at a traffic light and revealed his face in the rear view mirror. Sheriff Willeby radioed for assistance and continued to follow the Defendant, who at that time began driving erratically, *i. e.*, he executed a number of quick turns and eventually wound up about where Sheriff Willeby first found him. Deputy Derrick Taylor ("Deputy Taylor") finally stopped the Defendant, who pulled into a car wash bay on private property and got out of his vehicle. He could not produce a driver's license, and pleaded with the officers not to arrest him for driving under suspension. Sheriff Willeby instructed Deputy Taylor to confirm that the Defendant's license was suspended and to arrest him if it was.[2] Deputy Taylor did both.

The Defendant had a passenger in his vehicle. When the officers approached him, the passenger became nervous and confrontational. The officers asked whether he had any weapons, and when he hesitated, the officers became suspicious and patted him down. They found a loaded .22 caliber pistol hidden in the passenger's pants, and thereupon arrested him as well. They also discovered that the passenger had no driver's license.

Because neither the Defendant nor his passenger could remove the truck from the car wash bay, it was impounded and searched in accordance with written departmental policy. The search revealed a loaded SKS rifle with a 30 round magazine in an unlocked toolbox in the truck bed, three 7.62 x 39 rounds, a cell phone case and charger, and a handheld portable

---

[2]    Sheriff Willeby testified that the Defendant was arrested in accordance with an unwritten departmental policy modeled on the Oklahoma Highway Patrol's policy, which leaves to the discretion of the officer involved whether to arrest (or merely to cite) persons found driving under suspension. Sheriff Willeby conceded that any officer not aware of the bomb threat investigation would have had the discretion to release the Defendant with a citation. He maintained, however, that the Defendant would have been arrested anyway because he had been previously arrested for driving under suspension.

scanner inside the cab. The scanner, which had the name "Jason" written on it, was receiving radio calls on the McCurtain County Sheriff's Department's frequency. The Defendant's vehicle was then towed by a private wrecker service to the impound lot, where any other items left in the vehicle were secured. The officers did not contact the owner of the car wash before towing the vehicle.

## B. Applicable Law

The Fourth Amendment prohibits unreasonable searches and seizures, and a traffic stop is a seizure pursuant to the Fourth Amendment. *United States v. Taverna*, 348 F.3d 873, 877 (10th Cir. 2003), *citing Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Such stops are analyzed under the principles for investigative detentions set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). "[A] traffic stop is reasonable under the Fourth Amendment at its inception if the officer has either (1) probable cause to believe a traffic violation has occurred or (2) a reasonable articulable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." *United States v. Ramstad*, 308 F.3d 1139, 1143 (10th Cir. 2002), *citing United States v. Ozbirn*, 189 F.3d 1194, 1197 (10th Cir. 1999) [quotations and citation omitted].

Police have discretion to impound a vehicle when "the decision is based upon standard criteria and something other than the suspicion that there is evidence of criminal activity." *United States v. Thomas*, 73 Fed.Appx. 365, 369 (10th Cir. Aug. 19, 2003) [unpublished opinion], *citing Colorado v. Bertine*, 479 U.S. 367, 375 (1987). Impoundment is reasonable when it "was permissible under state law and in accordance with police department policy which required impoundment upon arrest of the driver." *Id.*, *citing United States v. Haro-Salcedo*, 107 F.3d 769, 771-72 (10th Cir. 1997). It is well-established that the police are

-4-

authorized to impound vehicles "[i]n the interests of public safety and as part of what the Court has called 'community care-taking functions.'" *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976), *quoting Cady v. Dombrowski*, 413 U.S. 433, 441 (1973).

When the police lawfully impound property, they are entitled to perform an administrative search of the property in order to inventory the contents of that property. *See Bertine*, 479 U.S. at 371. In fact, "inventory searches are a well-defined exception to the warrant requirement of the Fourth Amendment, and, inasmuch as inventory searches are routine noncriminal procedures, they are to be judged by the standard of reasonableness under the Fourth Amendment." *United States v. Kornegay*, 885 F.2d 713, 716 (10th Cir. 1989), *citing Opperman*, 428 U.S. at 372. "To be justified as an inventory search, however, the search cannot be investigatory in nature but must instead be used only as a tool to record the defendant's belongings to protect the police from potential liability." *United States v. Edwards*, 242 F.3d 928, 938 (10th Cir. 2001). Inventory searches serve three administrative purposes: "'the protection of the owner's property while it remains in police custody, the protection of the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger.'" *United States v. Tueller*, 349 F.3d 1239, 1243 (10th Cir. 2003). To be reasonable, the search must be "conducted according to standardized procedures," and it "must not be a ruse for a general rummaging in order to discover incriminating evidence, but rather an administrative procedure designed to produce an inventory." *Haro-Salcedo*, 107 F.3d at 772.

## C. Legal Analysis

The Defendant contends that the evidence seized from his truck should be suppressed for two reasons: (i) Sheriff Willeby impounded the Defendant's vehicle in violation of

Oklahoma law; and, (ii) Sheriff Willeby impounded and searched the Defendant's vehicle not to prepare an inventory but instead to obtain evidence, which violated the Fourth Amendment because the search was conducted without a warrant.[3]   Neither of these contentions is persuasive.

## 1. The Defendant's Vehicle Was Impounded In Accordance With Oklahoma Law

It is clear that Sheriff Willeby's impoundment of the Defendant's vehicle did not violate Oklahoma law. The Defendant argues that because his vehicle was located on private property at the time, Sheriff Willeby could not lawfully impound it without a request from the owner of the property. *See, e. g., McGaughey v. State,* 2001 OK CR 33, ¶ 44, 37 P.3d 130, 142-43 ("This Court has also repeatedly held, however, that a car on private property cannot be impounded absent a request from the property owner or other specific authorization."), *quoting Kelly v. State,* 1980 OK CR 7, ¶ 7, 607 P.2d 706, 708 ("The decision to impound on private property does not properly rest with the police officer. It is incumbent upon the owner of the private property to request removal of a car if he deems it

---

[3]     The Defendant suggests by the phrasing of his propositions that the impoundment of his vehicle violated federal constitutional law and that the search of the vehicle violated Oklahoma law, but the ensuing arguments demonstrate otherwise. In any event, an inventory search of a vehicle properly impounded by police does not violate Oklahoma law. *See Starks v. State,* 1985 OK CR 31, ¶5, 696 P.2d 1041, 1042 ("It is clear that inventory searches, if conducted pursuant to standardized impoundment procedures, are not violative of either the Fourth Amendment to the Federal Constitution or to Okla. Const. art. II, § 30."). Further, proper impoundment of a vehicle by police in accordance with state law does not otherwise violate the Fourth Amendment. *See Thomas,* 73 Fed. Appx. at 369 [unpublished opinion] ("In *United States v. Haro-Salcedo,* this court held that the impoundment of the defendant's vehicle was reasonable when the impoundment was permissible under state law and in accordance with police department policy which required impoundment upon arrest of the driver."), *citing Haro-Salcedo,* 107 F.3d at 771-72.

-6-

a nuisance or a trespass."). However, when a vehicle is left on private property because of

a traffic stop resulting in a valid arrest of the driver, no such request is required. *See Starks*

*v. State,* 1985 OK CR 31, ¶¶ 7-8, 696 P.2d 1041, 1042 ("Once the officer commenced the

fulfillment of his duties, he was authorized to impound appellant's vehicle when the arrest

was completed.").[4] All that is required in such a situation is that impoundment be

"conducted according to the authority of a municipal ordinance, or as a requirement of police

department regulations. *Id.* at ¶ 6, 696 P.2d at 1042, *citing Lee v. State,* 1981 OK CR 59, 628

P.2d 1172, *and Kelly,* 1980 OK CR 7, 607 P.2d 706.

In this instance, the written policy of the McCurtain County Sheriff's Department

provided the appropriate authority for the impoundment of the Defendant's vehicle:

> The McCurtain County Sheriff's Department impounds and inventories every
> vehicle which would have otherwise been left unattended by a lawful owner
> due to actions of the Sheriff's Department.
>
> Impoundment and complete inventory of a vehicle insures that no damage will
> be done to it until the owner can reclaim it. Impoundment and inventory also
> insures against theft of the contents of or unjust claims of theft made against
> the impounding officer. Also, the possibility of leaving dangerous articles,
> such as firearms, in a public place is eliminated.

*See* Def. Ex. 1. It is clear the Defendant's vehicle was impounded in accordance with this

policy. Initially, it should be noted that the Defendant's vehicle was seized because it was

---

[4]    In *Starks*, the court observed that "[t]he fact that appellant drove onto private property
after the officer turned on his emergency equipment does not preclude the officer from pursuing his
task of a legal confrontation with appellant. To permit such to interfere with the officer's duties
would be tantamount to providing an easy escape from responsibility by the offender." 1985 OK CR
31, ¶¶ 7-8, 696 P.2d 1041, 1042. The same could be said about the Defendant's decision to drive
into the car wash instead of stopping on the street.

"left unattended by a lawful owner due to actions of the Sheriff's Department[,]" *i. e.*,

because both the Defendant and the lone passenger were arrested. Further, there is no

evidence that either arrest was illegal. *See, e. g., Patrick v. State,* 1976 OK CR 16, ¶ 6, 545

P.2d 819, 820 ("However, the legality of the impoundment and subsequent inventory search

must rest upon the legality or lawfulness of the initial arrest for which defendant is to be

taken into custody."). The Defendant was arrested because: (i) the sheriff obtained

information that his license had been suspended; (ii) the sheriff stopped him after personally

observing that he was driving the vehicle;[5] and, (iii) the Defendant was unable to produce a

license after being stopped. The passenger was arrested because a pat-down search revealed

a pistol hidden in his pants.[6] Obviously there was probable cause for both arrests.

The Defendant *does* complain about his arrest, but not because of a lack of probable

cause; he complains instead that the officers abused their discretion, *i. e.*, that he was arrested

(instead of being cited and released) because Sheriff Willeby wanted to impound and search

---

[5]      The Defendant apparently does not question the legality of the initial stop for driving
with a suspended license, which was justified at its inception if the stop was based on the reasonable
suspicion that an applicable traffic or equipment regulation was being violated. *Ramstad*, 308 F.3d
at 1143. In this regard, a driver commits a misdemeanor under Oklahoma law by driving a vehicle
with a suspended license. 47 Okla. Stat. Ann. § 6-303(B), amended by 2004 Okla. Sess. Law Serv.
Ch. 387 (H.B. 2999) (June 3, 2004). Sheriff Willeby had information that the Defendant's driver's
license was suspended, and he personally observed the Defendant driving the vehicle. *See United
States v. Guebara*, 15 Fed.Appx. 584, 587 (10th Cir. June 5, 2001) (stop was not unreasonable when
officer effecting stop had reliable information that the defendant was driving the vehicle, had a
suspended license, and the vehicle was registered to a wanted felon) [unpublished opinion].

[6]      Even if the passenger had not been arrested, the Defendant's vehicle would have been
impounded. Sheriff Willeby testified that it was departmental practice to allow a passenger with a
driver's license to remove a vehicle from which the driver was arrested. However, the passenger in
the Defendant's vehicle had no driver's license.

-8-

his vehicle as part of the bomb threat investigation. In this regard, Sheriff Willeby testified that the unwritten departmental policy left to the discretion of the officer involved whether to arrest (or merely to cite) a person driving under suspension. He also testified, however, that his decision to arrest the Defendant was in accordance with the policy (and that of the Oklahoma Highway Patrol, on which it was apparently based) because the Defendant had already been arrested previously for driving under suspension. The undersigned Magistrate Judge is therefore satisfied that the Defendant's arrest, and the subsequent impoundment of his vehicle, were in accordance with departmental policy and Oklahoma law.

### 2. The Search of the Defendant's Vehicle Was a Proper Inventory Search and Therefore Did Not Violate the Fourth Amendment

It is also clear that the inventory search of the Defendant's vehicle did not violate the Fourth Amendment. *See, e. g., Kornegay*, 885 F.2d at 716 ("[I]nventory searches are a well-defined exception to the warrant requirement of the Fourth Amendment, and, inasmuch as inventory searches are routine noncriminal procedures, they are to be judged by the standard of reasonableness under the Fourth Amendment."), *citing Opperman*, 428 U.S. at 372. The Defendant's sole argument in this regard is that the search of his vehicle was not a true inventory search, but rather an investigative search for incriminating evidence. *See Edwards*, 242 F.3d at 938 ("To be justified as an inventory search, however, the search cannot be investigatory in nature but must instead be used only as a tool to record the defendant's belongings to protect the police from potential liability."); *Haro-Salcedo*, 107 F.3d at 772 (To be reasonable, an inventory search must be "conducted according to standardized

procedures" and "not be a ruse for a general rummaging in order to discover incriminating evidence, but rather an administrative procedure designed to produce an inventory."). As proof of this claim the Defendant offers the following: (i) the McCurtain County Sheriff's Department was looking for the Defendant the day he was stopped, (ii) Sheriff Willeby was looking for any possible reason to arrest the Defendant; (iii) there was no outstanding arrest warrant for the Defendant, although Sheriff Willeby knew the FBI was hoping to get one; and, (iv) Sheriff Willeby elected to arrest the Defendant (despite having discretion under departmental policy to cite him instead) in order to impound his vehicle and search it for incriminating evidence. The undersigned Magistrate Judge does not find that these factors indicative of an investigative search for incriminating evidence.

First, there is no evidence the McCurtain County Sheriff's Department was specifically looking for the Defendant on June 23, 2004. Deputy Bowen was aware of (but not involved in) the bomb threat investigation, and simply informed Sheriff Willeby when he observed the Defendant's vehicle. Sheriff Willeby *was* involved in the investigation, but he was not actively searching the county for the Defendant; he decided to investigate when he heard the Defendant was operating a vehicle despite having a suspended license. Deputy Taylor was apparently neither aware of nor involved in the bomb threat investigation; he simply assisted in stopping the Defendant at Sheriff Willeby's behest. Second, even if Sheriff Willeby *was* looking for a reason to arrest the Defendant, he had a "reasonable articulable suspicion that a traffic or equipment violation [had] occurred or [was] occurring[,] and it was therefore "irrelevant that he may have had other subjective motives for stopping

-10-

the vehicle." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995).[7]  Third, while it is true there was no outstanding arrest warrant for the Defendant, as noted above there was probable cause for his arrest; Sheriff Willeby personally observed the Defendant operating a vehicle after receiving information that his license was suspended. *See Parker v. Strong*, 717 F. Supp. 767, 770 (W.D. Okla. 1989) ("[A]fter a driver has been stopped by police, the discovery that he was driving without a valid license provides probable cause for his arrest.").  Fourth, the undersigned Magistrate Judge does not find that Sheriff Willeby arrested the Defendant (instead of citing him) so he could impound the Defendant's vehicle and search it for incriminating evidence.

As discussed in detail above, the arrest of the Defendant and subsequent impoundment of his vehicle were conducted in accordance with departmental procedure. The same is true of the search of the Defendant's vehicle, *i. e.*, the McCurtain County Sheriff's Department "impounds and inventories every vehicle which would have otherwise been left unattended

---

[7]     In *Botero-Ospina*, the Tenth Circuit overruled its previous decision in *United States v. Guzman*, 864 F.2d 1512 (10th Cir.1988), rejecting as unworkable the idea that an otherwise valid traffic stop would violate the Fourth Amendment if motivated by the desire to investigate other suspected illegal activity: "Our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated 'any one of the multitude of applicable traffic and equipment regulations' of the jurisdiction." 71 F.3d at 787, *citing Prouse*, 440 U.S. at 661.  The *Botero-Espina* court did, however, observe that, "if an officer's initial traffic stop, though objectively justified by the officer's observation of a minor traffic violation, is motivated by a desire to engage in an investigation of more serious criminal activity, his investigation nevertheless will be circumscribed by Terry's scope requirement." *Id.* at 788.  Although the Defendant claims that Sheriff Willeby sought him out and arrested him in order to investigate the bomb threats, there is no evidence Sheriff Willeby did so by exceeding the permissible scope of the initial traffic stop under *Terry v. Ohio*, 392 U. S. 1 (1968).  In any event, as noted above, Sheriff Willeby had probable cause to arrest the Defendant for driving under suspension even before the initial traffic stop.

by a lawful owner due to actions of the Sheriff's Department[,]"[8] *see* Def. Ex. 1, and it does

so for the legally permissible reasons expressed in the department's written policy: to protect

against damage to the vehicle, theft of its contents, unjust claims of theft against the

impounding officer and public access to dangerous items. *See, e. g., Tueller,* 349 F.3d at

1243 (Inventory searches "are not treated as investigative searches because they serve three

administrative purposes: 'the protection of the owner's property while it remains in police

custody, the protection of the police against claims or disputes over lost or stolen property,

and the protection of the police from potential danger.'"), *quoting Opperman,* 428 U.S. at

369 [internal citations omitted].  The undersigned Magistrate Judge therefore concludes that

the search of the Defendant's vehicle did not violate the Fourth Amendment.[9]

### 3.  Summary

In summary, the impoundment of the Defendant's vehicle was in accordance with

departmental policy and therefore lawful under Oklahoma law. The same is true with respect

to the inventory search of the Defendant's vehicle. Because the impoundment and inventory

search of the Defendant's vehicle was also reasonable under the Fourth Amendment, *see*

---

[8]        The fact that the Defendant's vehicle was searched immediately upon his arrest
(rather than after being impounded) does not suggest an impermissible investigative search. *See
United States v. Martin,* 566 F.2d 1143, 1145 (10th Cir. 1977) ("Prior to towing the police officers
made an inventory search of the vehicle, and it was this search which disclosed the unregistered
shotgun in the trunk of the car. In our view, the instant search is factually similar to the search in
Opperman, and we believe that the present controversy is governed by that case."), *citing Opperman,*
428 U.S. at 366.

[9]        Because the undersigned Magistrate Judge finds that the impoundment and inventory
of the Defendant's vehicle was lawful, there is no reason to discuss the USA's argument that the
search also was valid as a search incident to a lawful arrest.

-12-

*Kornegay*, 885 F.2d at 716, *citing Opperman*, 428 U.S. at 372, Defendant Roberts' Motion to Suppress and Brief in Support [Docket No. 7] should be denied.

### D. Conclusion

The impoundment and search of the Defendant's vehicle violates neither Oklahoma law nor the Fourth Amendment to the United States Constitution. The undersigned Magistrate Judge therefore PROPOSES the findings of fact set forth herein and accordingly RECOMMENDS that the Defendant Anthony Jason Roberts' Motion to Suppress and Brief in Support [Docket No. 7] be in all things denied. The parties are herewith given ten (10) days from the date of the service of this Report and Recommendation to file with the Court Clerk any objections, with supporting briefs. Failure to object to this Report and Recommendation within ten (10) days will preclude appellate review of the judgment of the District Court based on such findings.

IT IS SO ORDERED this 2nd day of September, 2004.

STEVEN P. SHREDER
**UNITED STATES MAGISTRATE JUDGE**